IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-07-0132 |
| TROY GROSS, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM ORDER**

Defendant Troy Gross, Sr. ("Gross") is serving a 646-month sentence arising from an armed bank robbery he committed in 2007, at the age of 44. (*See* Judgment and Commitment Order 1, ECF No. 27; Presentence Investigation Report ("PSR") ¶¶ 1, 7–9.) A full 32 years of Gross's sentence arises from two "stacked" counts of Brandishing a Firearm in Connection with a Crime of Violence, in violation of 18 U.S.C. § 924(c). (*See* Judgment and Commitment Order 2.) Section 924(c) requires the court to issue a mandatory, consecutive 25-year sentence for any "second or subsequent" conviction—an enhanced penalty "reserved for recidivist offenders." *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). In 2007, when Gross was convicted, this enhanced penalty would apply whenever a defendant faced multiple § 924(c) convictions, "even if they were obtained in the same case." *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Today, the First Step Act of 2018 has ended this practice.

Now pending is Gross's *Pro se* Motion for Sentence Reduction (ECF No. 55), as well as Gross's Supplemental Motion for Sentence Reduction, both filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 58.) In support of these motions, Gross argues that the severity

of his "stacked" § 924(c) sentence, his efforts to treat his drug addiction, and evidence of rehabilitation, support reducing his sentence to 14 years on his two § 924(c) convictions and 1 day on his bank robbery count. (Gross's Mem. Supp. Sent. Reduction 1–2, ECF No. 58.) The Government opposes this request and argues in the alternative that Gross should receive a sentence of 430 months. (Gov't Resp. Opp. 1–3.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Gross's Motions for Sentence Reduction (ECF Nos. 55, 58) are hereby **GRANTED IN PART.** Gross will be resentenced to a term of 343 months, or approximately 28 years.

## BACKGROUND

The underlying facts of Gross's offenses are set forth in the Presentence Investigative Report ("PSR"), which was adopted by this Court on October 1, 2007. (PSR ¶¶ 1–3; Statement of Reasons 1.) According to that report, and as stipulated in Gross's plea agreement, Gross committed two separate armed bank robberies in January and February 2007. (PSR ¶ 7–9.) On January 30, 2007, Gross robbed a Wachovia Bank in Baltimore, and stole $11,520 in cash. (*Id.*) During the course of this robbery, he threatened customers and bank employees with a semi-automatic handgun but did not shoot. (*Id.*) On February 20, 2007, Gross attempted to rob the same bank again. (*Id.*) However, when Gross revealed his weapon, Sergeant Robert Eisman of the Baltimore City Police Department shot Gross in the legs and the abdomen and placed him under arrest. (*Id.* ¶¶ 8, 112.)

Gross was charged in a six-count federal indictment with two counts of Bank Robbery, in violation of 18 U.S.C. § 2113; two counts of Brandishing a Firearm in Connection with a Crime of Violence, in violation of 18 U.S.C. § 924(c); and two counts of Possession of a

Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g). (*Id.* ¶ 1.) On June 11, 2007, Gross pled guilty to the first Bank Robbery count, and both § 924(c) counts. (*Id.* ¶ 2.) The remaining counts were dismissed. (Judgment & Commitment Order 1.)

On the day Gross attempted the second bank robbery, he was due to surrender for a 2005 charge of Possession of a Firearm by a Convicted Felon. (PSR ¶¶ 43–72.) This charge was the latest conviction in a lengthy criminal history that resulted in Gross receiving Career Offender Status under U.S.S.G. § 4B1.1. (*Id.* ¶ 72.) That designation, combined with a criminal history category of VI and a base offense level of 32, yielded a Guidelines Range of 210 to 262 months on the Armed Bank Robbery count. (*Id.* ¶ 91.) Commensurate with U.S.S.G. § 4B1.1 and the consecutive mandatory minimums of 84 and 300 months required by Gross's § 924(c) counts, this Court sentenced Gross to 646 months in prison, with credit for time served since his February 20, 2007 arrest on the prior firearm charge. (Judgment & Commitment Order 2.) In imposing this sentence, this Court specifically determined that "[a] sentence at the high end [of the Guidelines] is necessary because of the seriousness of the offense." (Statement of Reasons 2.)

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The

Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

## I. Administrative Exhaustion Requirements

Gross has satisfied the preconditions to filing his Motions for Sentence Reduction. On December 3, 2020, Gross submitted a letter to Warden Felipe Martinez, Jr., of FCC Victorville, CA, requesting compassionate release on the same grounds alleged in this motion. (Mem. Supp. 7; Letter to Warden, ECF No. 55-3.) The Government does not contest that Gross properly filed this request. (Gov't Resp. Opp. 8–9.) As more than 30 days have elapsed since Gross submitted his request to the Warden, (Envelope, ECF No. 55-4), his motion is properly before this Court. *See* 18 U.S.C. § 3582(c)(1)(A).

## II. Extraordinary and Compelling Reasons

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to

recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release motions filed by a defendant in the wake of the First Step Act).[1] As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); *accord McCoy*, 981 F.3d at 281 (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'").

---

[1] The Government devotes a significant portion of its brief to the proposition that *McCoy* was incorrectly decided and should be disregarded. (Gov't Resp. Opp. 9–17.) This argument is unavailing. *McCoy* is binding Fourth Circuit authority, and the Government "is no freer to ignore it than this Court." *United States v. Williams*, No. PWG-90-0135, ECF No. 1307 n.3 (D. Md. Mar. 12, 2021) (Grimm, J.).

Intervening changes in sentencing law may constitute extraordinary and compelling reasons that justify a motion for a sentence reduction. *E.g.*, *United States v. Day*, 474 F. Supp. 3d 790, 805 (E.D. Va. 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 979–81 (C.D. Cal. 2020); *United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. 2019). Gross notes that three recent Supreme Court decisions have increased the flexibility of the sentencing court to account for § 924(c) sentences. (Gross' Mem. 7–9.) In *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that a court may vary from the Sentencing Guidelines based on policy disagreements and individualized assessments made pursuant to § 3553(a). *See* 552 U.S. at 101–02; 552 U.S. at 49–50. Likewise, in *Dean v. United States*, 137 S. Ct. 1170 (2017), the Supreme Court held that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." 137 S. Ct. at 1176–77.

Standing alone, these cases are not so monumental as to constitute "extraordinary and compelling reasons" that justify a sentence reduction. Although *Kimbrough*, *Gall*, and *Dean* widened the breadth of a court's discretion to depart from the Guidelines, Gross offers no evidence that this Court would have granted such relief in his case. Rather, at sentencing, this Court found that "[a] sentence at the high end" of the Guidelines range "is necessary because of the seriousness of the offense." (Statement of Reasons 2.)

Nevertheless, Gross also observes that he is serving "a term of incarceration decades longer than what [he] would receive if prosecuted today" based on "stacked" § 924(c) counts. (Gross's Mem. 2.) At the time Gross was convicted and sentenced, "Section 924(c) was

6

interpreted as prescribing a 5-year mandatory minimum for a first conviction, and a consecutive 25-year term for any ["second or subsequent"] conviction—even if obtained in the same case." *United States v. Ramos*, Crim. No. PJM-04-293, 2021 WL 826304, at *1 (D. Md. Mar. 4, 2021). "The First Step Act ended this practice, known as sentence 'stacking,' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and 'has become final.'" *McCoy*, 981 F.3d at 275; *accord United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020) ("Under the First Step Act . . . the 25-year mandatory minimum is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.").

The Fourth Circuit has held that the effect of First Step Act on § 924(c) sentencing law may be grounds for compassionate release. In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the United States Court of Appeal for the Fourth Circuit held that "the severity of a [stacked] § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief" due to the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." *McCoy*, 981 F.3d at 285. District Courts around the country have consistently held the same. *See, e.g.*, *United States v. Ramos*, Crim. No. PJM-04-293, 2021 WL 826304, at *1 (D. Md. Mar. 4, 2021); *United States v. Bryant*, No. 94-202-CCB-3, 2020 WL 2085471, at *3 (D. Md. 2020); *United States v. Redd*, 444 F. Supp. 3d 717, 722–23 (E.D. Va. 2020); *United States v. Jones*, 482 F. Supp. 3d 969, 980–81(N.D. Cal. 2020).

This Court reaches the same conclusion here. Gross was sentenced to 262 months for bank robbery and two consecutive terms totaling 384 months for his two § 924(c) convictions. (Gross' Mem. 8–9.) The resulting sentence of 646 months "is 18 years longer than what Congress deems an adequate punishment for comparable § 924(c) conduct today," and substantially greater than the average sentence that is ordinarily issued for murder. (*Id.* at 9.) *Cf. Interactive Data Analyzer*, U.S. Sent'g Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Jan. 14, 2022) (observing that the average length of a murder sentence issued in the District of Maryland in FY2020 was 254 months, and the median 270 months). In alignment with *McCoy*, and with the growing consensus of district courts facing this issue, this Court has no difficulty finding that Gross's stacked sentence provides an "extraordinary and compelling" ground that justifies a motion for sentence reduction.

Of course, "the Fourth Circuit also made clear that defendants convicted under the old § 924(c) sentencing regime do not receive relief as a matter of right." *United States v. Eady*, No. 2:12-cr-0415-DCN-1, 2021 WL 2354930, at *2 (D.S.C. Jun. 9, 2021); *accord United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart."). As Congress did not craft the First Step Act to have retroactive effect, the Fourth Circuit in *McCoy* also held that "not all defendants convicted under § 924(c) should receive new sentences," but rather, that "courts should be empowered to 'relieve some defendants of those sentences on a case by case basis.'" 981 F.3d at 286–87 (citation omitted). The Government insists that Gross's circumstances are not "extraordinary and compelling," particularly in light of "his age at the time of the offense, his criminal history, [] his behavior while incarcerated," and his lack of rehabilitation. (Gov't Resp. Opp. 13–15.)

8

Although such considerations are relevant to this Court's disposition, they are better addressed under the § 3553(a) sentencing factors, discussed at length below. At this stage, this Court is satisfied Gross has presented "extraordinary and compelling reasons" that warrant considering his request.

### III. 18 U.S.C. § 3553(a) Factors

As with any sentencing decision, a court addressing a compassionate release motion must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4. Gross requests a reduced sentence of fourteen years and one day—reflecting two consecutive seven-year sentences on his § 924(c) counts, and a one-day sentence on his conviction for bank robbery.

Gross's most compelling argument is that his stacked sentence results in "unwarranted sentencing disparities," and is greater than necessary "to provide just punishment, promote respect for the law, and reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(3). As noted above, the term of imprisonment imposed for Gross's second § 924(c) offense no longer reflects the reasoned judgment of Congress. *Cf. McCoy*, 981 F.3d at 285–86 ("[D]efendants are serving sentences that Congress itself views as dramatically longer than necessary or fair").

9

Gross notes that this Court routinely grants sentence reductions to "defendants convicted of far more serious and violent crimes," (Gross's Mem. 20), referencing a wealth of cases in which defendants have received lesser sentences for shootings, murder conspiracies, and gang-related murders. *See, e.g.*, *United States v. Babb*, No. ELH-04-0190, 2021 WL 2315459 (D. Md. Jun. 4, 2021); *United States v. Gray*, No. CCB-95-0364, (D. Md. May 10, 2021); *United States v. Bazemore*, No. CCB-16-597 (D. Md. Nov. 15, 2018); *United States v. Hernandez-Guevara*, Crim. No. PX-17-382 (D. Md. Oct. 18, 2019). These "unwarranted sentencing disparities" reinforce Gross's contention that "[his] term of incarceration is now difficult to reconcile with the goals of sentencing." *Ramos*, 2021 WL 826304, at *3.

Gross's "history and characteristics" are somewhat neutral. Gross points to his post-sentencing conduct as evidence that he has reformed. *Cf. Pepper v. United States*, 562 U.S. 476, 492 (2011) (reasoning that post-sentencing conduct "provides the most up-to-date picture of [a defendant's] 'history and characteristics'"). Gross has expressed remorse for his conduct, acknowledging the "pain, anguish, frustration, and sadness that [he] caused to the employees, customers, and police officers at [the] bank." (Gross's Letter, ECF No. 58-2.) He has "taken advantage of the limited resources available at the prison to confront his drug addiction" by completing a drug abuse education course, signing up for non-residential drug treatment, and reflecting on the way drugs have impacted his life. (Gross's Mem. 11–13; Drug Abuse Educ. Certificate, ECF No. 58-3; BOP Individualized Needs Plan 3, ECF No. 58-4; Gross's Letter 2–3.) His disciplinary record is "devoid of any violence." (Gross's Mem. 12; BOP Disciplinary Record, ECF No. 58-1.) And he has an effective release plan in place, supported by family

10

members and conditions of supervised release that would allow him to treat his addiction. (Gross's Mem. 13; Carolyn Snow Letter, ECF No. 58-5.)

Although these indicators are positive, they do not present the full story of Gross's post-incarceration conduct. As the Government observes, Gross has received 17 disciplinary hearings and 22 charges during his time in prison, the latest as recently as March 17, 2021. (Disciplinary Record 1–7, ECF No. 63-1.) Although his infractions primarily relate to the use of drugs or alcohol and general disruptive conduct, their frequency undermines Gross's claim of rehabilitation—and his 2014 citation for weapon possession undercuts his assertion that his record is "devoid of any violence," emphasizing the need for deterrence and incapacitation at this time. (*Id.* at 4–7.)

That concern is reinforced by Gross's extensive criminal history, and the "nature and seriousness" of his offense. As the Government notes, Gross "committed a violent, armed bank robbery and attempted to commit a second one month later." (Gov't Resp. Opp. 17.) While nobody was injured, both robberies "were executed at gunpoint." (*Id.*) And they were the latest in a series of offenses dating back to Gross's childhood—including a 1980 robbery, a 1982 second degree sexual offense, a 1985 drug possession charge, a 1985 criminal contempt charge, and a string of 1986 convictions for robbery with a deadly weapon. (PSR ¶¶ 43–72.) He remained incarcerated until July 31, 2003. (*Id.* ¶ 67.) Only three years later, he pled guilty to a gun possession charge after reaching for a concealed weapon during a police traffic stop. (*Id.* ¶¶ 68–69.) And on the very day he was scheduled to surrender for that offense, he committed the instant attempted robbery. (*Id.* ¶¶ 68–70.)

11

On balance, these factors do not support the entire sentence reduction Gross requests. Gross requests that this Court exercise its discretion to vary his sentence downwards to 168 months on his two § 924(c) counts, and one day on his conviction for armed bank robbery. Such a dramatic reduction is not justified at this time. Although Gross's progress towards treating his addictions is laudable, his rehabilitation is insufficient to overcome the gravity of his offenses and his extensive, violent criminal history. Just as maintaining Gross's current sentence would produce "unwarranted sentencing disparities," issuing a one-day sentence for armed bank robbery would not "deter just punishment, promote respect for the law, or reflect the seriousness of the offense."

Nevertheless, this Court deems it appropriate to resentence Gross commensurate with the term of imprisonment he would receive today for the same offenses. The Government suggests resentencing Gross to 430 months, reflecting two 7-year mandatory minimum sentences on his § 924(c) counts, and 21 years on the armed bank robbery count. (Gov't Resp. Opp. 22 n.17.) This result aligns with the Guidelines Range applicable to Gross's offenses: During sentencing, Gross was assigned a base offense level of 32 and a Criminal History Category of VI as a career offender, yielding a Guidelines Range of 210 to 262 months for his armed bank robbery charge. (Statement of Reasons 1; PSR ¶¶ 37–38, 91.) Pursuant to U.S.S.G. § 4B1.1(c)(2), this sentence was appended to the statutory minimum 384 months arising from Gross's two § 924(c) counts to yield a Guidelines Range of 594 to 646 months. Reflecting the severity of his offense, Gross received a sentence at the very top of that range. (*Cf.* Statement of Reasons 2.)

Today, two § 924(c) counts result in a statutory minimum sentence of 168 months and a Guidelines Range of 378 to 430 months, aligning with the Government's proposed sentence. But this Court has the discretion to go further, and elects to exercise it here. In its Judgment and Commitment Order, this Court ordered that "[t]he defendant shall be given credit for time served since February 20, 2007," the date on which he was arrested for the instant offense. (Judgment & Commitment Order 2.) Despite this instruction, the Bureau of Prisons calculated the 646-month sentence issued in this case as consecutive to the 87-month sentence for his prior conviction for firearm possession. (BOP Inmate Data, ECF No. 58-1.) The result is a total term of incarceration of 769 months, substantially beyond the term of 646 months this Court contemplated at sentencing. (*Id.* at 4.)

The Government argues that Court should dismiss this request for lack of jurisdiction. Ordinarily, a "request for sentencing credit is properly brought under [28 U.S.C.] § 2241," the statutory vehicle for challenges to the BOP's calculation of a prisoner's sentence. *United States v. Little*, 392 F.3d 671, 679–80 (4th Cir. 2004). A § 2241 motion must be filed "in the district in which the prisoner is confined." *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000). Nevertheless, Gross does not attack the BOP's calculation—rather, he requests that this Court account for the BOP's calculation when fashioning a "just sentence" in the instant case. *Cf. Dean*, 137 S. Ct. at 1176–77. Accordingly, in granting Gross's request for a reduction in sentence, this Court finds it appropriate to subtract 87 months from the Government's proposed 430-month sentence. Gross will be resentenced to a total term of 343 months, or just over 28 years.

13

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 19th day of January, 2021, that Defendant Troy Gross's Motions for Sentence Reduction (ECF Nos. 55, 58) are **GRANTED IN PART.** Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Troy Gross, Sr.'s term of incarceration is reduced to 343 months (28 years). An Amended Judgment & Commitment Order shall be prepared to reflect this reduction in sentence.

_____/s/_____
Richard D. Bennett
United States District Judge